## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-24942-PCH/Becerra

JONATHAN BOWLES,

     Plaintiff,

v.

KILOLO KIJAKAZI,[1] Commissioner of
Social Security Administration,

     Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT[2]

    **THIS CAUSE** came before the Court on the Parties' Cross Motions for Summary Judgment. ECF Nos. [14], [17]. Plaintiff, Jonathan Bowles ("Plaintiff" or "Bowles"), filed his Motion for Summary Judgment on July 23, 2021 ("Plaintiff's Motion"). ECF No. [14]. Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed a Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment on September 22, 2021 ("Defendant's Motion"). ECF Nos. [17], [18].[3] Plaintiff did not file a reply, and the time to do so has passed. The Court must now determine whether the decision reached by the Administrative Law Judge (the "ALJ") is supported by substantial evidence and whether the correct legal standards were applied. After a review of the Motions, the record, and

---

[1] Although the case style originally listed Andrew Saul as Defendant, Kilolo Kijakazi is now the Commissioner of Social Security and is automatically substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] This matter was referred to the undersigned by the Honorable Paul C. Huck, Senior United States District Judge. ECF No. [2].

[3] Although the docket reflects that Defendant filed a separate Response to Plaintiff's Motion, ECF No. [18], it is the same document as Defendant's Motion, ECF No. [17].

all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **DENIED**, and Defendant's Motion be **GRANTED**.

## I.      BACKGROUND

On April 27, 2018, Plaintiff's mother filed a Title XVI application for supplemental security income benefits on his behalf, alleging a disability onset date of January 1, 2006.  R. at 82.[4]  Plaintiff was born on October 17, 2001, and as such, was four years old on the alleged disability onset date and sixteen years old at the time the application was filed.  *Id*.  The Social Security Administration ("SSA") initially denied Plaintiff's claim on July 11, 2018 and again upon reconsideration on October 2, 2018.  *Id*. at 107, 117.  Thereafter, Plaintiff requested a hearing, which was held on December 18, 2019.  *Id*. at 45, 124–26.  A vocational expert, Christina Fannin Morrison (the "VE"), testified at the hearing.  *Id.* at 72.  On March 31, 2020, the ALJ denied Plaintiff's application.  *Id*. at 20–39.  Thereafter, Plaintiff requested review of the ALJ's decision.  *See id.* at 9.  On September 28, 2020, Plaintiff's request for review was denied by the Appeals Council.  *Id.* at 6–8.  Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant action.  ECF No. [1].

### A.  The SSA Hearing

Plaintiff was eighteen years old and in the twelfth grade at the time of the hearing.  R. at 56.  Relevant to the issues at hand, Plaintiff testified that he struggled in school, specifically, that he found math "very difficult" because he had trouble counting, could not do multiplication without a calculator, could not do simple addition or subtraction without using his fingers, and could not count change.  *Id.* at 56–57.  Plaintiff testified that he was unable to complete purchases

---

[4] References herein to "R. at __" are to the Social Security transcript, which can be found at ECF No. [13].  The page numbers to the transcript referenced herein refer to those assigned by the Court's electronic docketing system as found on the top right corner of the page.

on his own because he could not calculate or verify the amount of change due. *Id.* at 57. Plaintiff testified that he also struggled with History and Spanish because he did not understand what he was "supposed to be learning." *Id.* at 57–58. Plaintiff stated that although he never had to repeat grades, he did have to repeat math twice in summer school. *Id.* at 58. Plaintiff testified that he was not placed in special education classes but was in smaller classes with less distractions. *Id.*

Plaintiff stated that he typically misses at least one month of the school year because he "get[s] really sick." *Id.* at 62–63. Specifically, Plaintiff stated that his sickness is typically attributed to depression. *Id.* at 63. Plaintiff stated that he "shut[s] down" and "sit[s] in bed crying" for one to two days. *Id.* Plaintiff stated that, other times, he gets a cold or the flu and is likewise unable to attend school for up to two days. *Id.* Plaintiff testified that he gets sick "[a]t least maybe one a week, but it depends on the severity." *Id.*

Plaintiff testified that he is responsible for chores such as "vacuuming, washing the dishes, [and] cleaning the bathroom," but that he often forgets or is too depressed to complete these chores. *Id.* Plaintiff stated that his only hobbies are drawing, playing video games, and clay sculpting. *Id.* at 61, 70–71. Plaintiff stated that he meets with friends outside of school "maybe . . . once every two months." *Id.* at 61. Plaintiff testified that he typically keeps to himself because friends are a "difficult topic," which in turn, "usually adds on to [his] depression." *Id.* at 61–62.

As to his ability to work as an adult, Plaintiff testified that his depression would make it difficult to maintain a job. *Id.* at 64–66. Plaintiff stated that when he is depressed, he "end[s] up [] losing motivation for everything" and often times "lashes out" on others by yelling, crying, and ultimately shutting down. *Id.* at 66–68. Plaintiff stated that this happens "a bit too often . . . maybe once every two weeks, maybe a month." *Id.* at 68. Plaintiff testified that he took the medication Abilify for some time, but he discontinued his use because it caused his tongue to swell. *Id.* at 69.

Plaintiff testified that he had been off medication since approximately July 2019 because it did not make him feel like himself.  *Id.* at 70.

The VE also testified at the hearing.  *Id.* at 72.  Because Plaintiff had just turned eighteen and had never been employed, the ALJ asked the VE to consider a hypothetical individual with no past relevant work and no exertional limitations.  *Id.* at 73.  The ALJ stated that this individual: should not be required to climb ladders, ropes or scaffolds; should not have exposure to hazardous machinery or mechanical parts and no unprotected heights; could occasionally interact with co-workers, supervisors and the public; should be able to complete simple, routine and repetitive tasks, but not at a production rate or pace; could maintain concentration for at least two hours at a time; would be on task 90% of the workday; and could not do basic math.  *Id.* at 73.  The VE testified that this hypothetical individual would be able to perform some jobs in the national economy based on the Dictionary of Occupational Titles ("DOT") and the Specific Vocational Preparation ("SVP") rating as to each job.  *Id.*  Specifically, the VE testified that this individual could perform jobs such as: (1) commercial cleaner–DOT 381.687-014, SVP of 2 heavy, reasoning level 1–for which there were approximately 150,000 jobs nationwide; (2) sandwich maker– DOT 317.664-010, SVP of 2 medium, reasoning level 1–for which there were approximately 64,000 jobs nationwide; and (3) kitchen helper–DOT 318.687-010, SVP of 2 and medium, reasoning level 2– for which there were approximately 170,000 jobs nationwide.  *Id.* at 73–75.

Next, the ALJ asked the VE to consider a second hypothetical individual with the same limitations as the first hypothetical but who would be absent one day per month.  *Id.* at 75.  The VE testified that the second hypothetical individual would still be able to perform the jobs previously provided.  *Id.*  The ALJ also asked the VE to consider a third hypothetical individual with the same limitations as the first hypothetical but who would miss work two days per month.

*Id.* The VE testified that "two absences would exceed what[] [is] customarily tolerated and would affect his ability to maintain competitive employment." *Id.* The ALJ asked the VE to consider a fourth hypothetical individual with the same limitations as the first hypothetical but who would be on task less than 90% of the day. *Id.* The VE testified that "anything more than 10% off task is going to affect just the normal rate of productivity," and as a result, would be work preclusive. *Id.* at 75–76. The VE stated that because the DOT does not discuss time off task or absences, the testimony was based on her "knowledge, education and experience in the field of vocational rehabilitation." *Id.* at 76.

Upon examination by Plaintiff's counsel, the VE testified that the three jobs identified all require a math level of one. *Id.* The VE stated that math level one includes the ability to "add and subtract two-digit numbers, multiply and divide 10s and 100s by 2, 3, 4, 5, perform the four basic arithmetic operations of coins as part of a dollar, perform operations with units such as cup, pint and quart, inch, foot and yard, ounce and pound." *Id.* The VE stated that her testimony regarding the available jobs was consistent with the limitation that the hypothetical individual could not perform basic math. *Id.* at 76. Specifically, the VE stated that a math level one is the lowest level of mathematical development within the DOT's classification system and that no level below a level one exists within the DOT. *Id.* The VE stated that a math level one, however, was consistent with the limitation that the hypothetical individual could not perform basic math because although the DOT description for the three jobs lists a math level one, the jobs do not require *any* "day-to-day math usage." *Id.* at 76–77. As such, the VE testified that a hypothetical individual with the lowest possible math abilities was capable of performing the jobs of commercial cleaner, sandwich maker, and kitchen helper. *Id.* The ALJ explained that although the DOT does not have a category below one, a hypothetical individual with no math development could perform these jobs because

they do not require any math usage such as "dealing with money" which was the particular concern with math that Plaintiff had articulated during the hearing.  *Id.* ("[L]et's say for kitchen helper, we can look at the job tasks for that. Sweep and mop floors does not require mathematical usage. Wash work tables, walls, refrigerators does not require mathematical usage. Segregate or move trash does not requires mathematical abilities. Steam clean or hose out garbage cans does not require mathematical abilities. Sort bottles does not require mathematical abilities. So I mean, we could go through all of these and they're not things that are dealing with money, having to do anything that requires math. So, that's about as, I guess, as short as you can get.").  In short, although Plaintiff testified that he was not confident that his math skills were sufficient to maintain employment, the VE testified that Plaintiff could perform these jobs because they do not require any such math abilities.  *Id.* at 76–77.

Finally, the VE stated that she calculated the number of available jobs using the Bureau of Labor Market Statistics.  *Id.* at 78.  The VE stated that the number of available jobs were published by Standard Occupational Classification ("SOC") code not DOT code, which means that one SOC code could encompass multiple DOT codes.  *Id.*  The VE stated that when an individual can only perform one of the jobs within an SOC code, she divides the number of available jobs for the SOC code by the amount of DOT codes in the category.  *Id.*  As a result, the VE stated that her testimony was an estimate of the number of jobs that exist per DOT code.  *Id.*

### B.  Statutory and Regulatory Framework

All claimants in social security cases, including those under the age of eighteen, bear the burden of proof.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a), (c).  A claimant under the age of eighteen is disabled if he has a medically determinable impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be

6

expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i);

20 C.F.R. § 416.906.  A marked and severe functional limitation is one that has a level of severity

that meets, medically equals, or functionally equals the listings set forth in 20 C.F.R. pt. 404, subpt.

P, app. 1.  *See* 20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a).

      The Social Security Act has established a three-step sequential evaluation process to

determine whether a claimant under the age of eighteen is disabled.  20 C.F.R. 416.924(a).  First,

if a child is engaged in substantial gainful activity, he is not disabled.  *Id.*  Second, the child must

have a medically determinable impairment or combination of impairments that is severe.  *Id.*

Finally, the child must have an impairment or combination of impairments that meets or medically

equals any of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  *Id.*; *T.R.C. ex rel. Boyd

v. Comm'r, Soc. Sec. Admin.*, 553 Fed. Appx. 914, 918 (11th Cir. 2014) (setting forth the childhood

disability standard).  If the child is not working and has a severe impairment, the ALJ must evaluate

whether the child's impairment meets or medically equals an impairment in the listings.  20 C.F.R.

§ 416.924(a)–(d).  If the child's impairment does not meet or medically equal a listed impairment,

the ALJ must determine if the impairment is functionally equivalent to the listings.  20 C.F.R. §§

416.924(d), 416.926a.  A child's impairment functionally equals the listings if it results in

"marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  20

C.F.R. § 416.926a(a).  The ALJ considers the child's functioning in six domains: (1) acquiring and

using information; (2) attending and completing tasks; (3) interacting and relating with others; (4)

moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-

being.  20 C.F.R. § 416.926a(d)(1).

      Individuals over the age of eighteen qualify for disability benefits if they demonstrate the

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

For adults, the ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). At step one, the ALJ must determine whether the claimant is "currently engaged in substantial gainful activity"; at step two, the ALJ must determine whether the claimant suffers from "severe"[5] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is able to return to his past relevant work given his Residual Functional Capacity ("RFC");[6] and if not, at step five, the ALJ must determine whether the claimant is able to perform other work as it exists in the national economy, given her age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability[,]" "[a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do."

---

[5] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to perform basic work activities "for a continuous period of at least twelve months," or is "expected to result in death." 20 C.F.R. §§ 404.1509, 404.1522.

[6] RFC is defined as "the most [a claimant] can still do despite [a claimant's physical and mental] limitations." 20 C.F.R § 404.1545(a).

*Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

### C. The ALJ's Decision

On March 31, 2020, the ALJ concluded that Plaintiff was not disabled for either the period before or after the time he turned eighteen years old. R. at 39. In reaching this decision, the ALJ first applied the three-step sequential evaluation process that must be used when considering claims by individuals under the age of eighteen. *Id.* at 21. At step one, the ALJ determined that Plaintiff had not engaged in substantial activity since the date the application was filed. *Id.* at 25.

At step two, the ALJ determined that before attaining the age of eighteen, Plaintiff had five "severe" impairments: (1) Attention Deficit Hyperactivity Disorder ("ADHD"); (2) Depression; (3) Anxiety; (4) Learning Disorder; and (5) Post-Traumatic Stress Disorder ("PTSD"). *Id.*

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.[7] *Id.* The ALJ stated that "[t]he magnitude of the claimant's symptoms and the medical evidence do not establish an impairment of listing level severity." *Id.* The ALJ further stated Plaintiff's mental impairments do not meet the required listing because Plaintiff "does not have the requisite limitations in the areas of mental functioning" and "no expert designated by the Commissioner has offered an opinion that the claimant's impairments, singly or in combination, meet or medically equal any section of the listed impairments." *Id.* The ALJ also found that Plaintiff's medical impairments

---

[7] The Listing of Impairments is a predetermined set of "major body systems impairments that [are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience" that would render an individual disabled. 20 C.F.R. § 416.925(a). An individual's impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 416.926(a); *see also id.* § 416.920(d).

did not functionally equal the listing because although his impairments could cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence . . . ." *Id.* at 26.  In terms of the six domains of function, the ALJ found that before attaining the age of eighteen: (1) Plaintiff had marked limitation in acquiring and using information given his issues with learning and mathematics; (2) Plaintiff had less than marked limitations in attending to and completing tasks because he was able to work in a classroom setting, displayed appropriate concentration on all tasks, did chores around the house, played video games and sculpted, and had average grades; (3) Plaintiff had less than marked limitation in interacting and relating with others because he had "age appropriate communication skills, and [was] understood by adults and his peers"; (4) Plaintiff had no limitations in moving about and manipulating objects because he regularly displayed a full range of motion; (5) Plaintiff had less than marked limitation in the ability to care for himself because there was "no evidence of paranoia ideations, mania, hallucinations, homicidal ideations" and Plaintiff could dress himself, groom himself, and "communicate his wants and needs independently"; and (6) Plaintiff had not limitations in his health and physical well-being because his physical examinations were within normal ranges.  *Id.* at 29–34.  Accordingly, the ALJ determined that Plaintiff was not disabled before attaining the age of eighteen because he "did not have an impairment or combination of impairments that resulted in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning."  *Id.* at 34 (quotation marks omitted).

Next, the ALJ applied the five-step sequential evaluation process that must be used when considering claims by individuals over the age of eighteen.  *Id.* at 34.  At step one, the ALJ concluded that because Plaintiff did not have any past relevant work, he was not engaging in

substantial gainful activity." *See id.* at 37.  At step two, the ALJ concluded that Plaintiff had not

developed any new impairments since attaining the age of eighteen, and as such, that Plaintiff

continued to have severe impairments.  *Id.* at 34–35.  At step three, the ALJ considered the listing

requirements and determined that Plaintiff's impairments did not meet or medically equal the

severity of any of the relevant listed impairments.  *Id.* at 35.  Moreover, the ALJ determined that

Plaintiff had the RFC to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: He could never climb ladders, ropes, or scaffolds.  He should not have any exposure to hazardous machinery/mechanical parts or unprotected heights.  He could occasionally interact with co-workers, supervisors, and the public.  [Plaintiff]'s work must have no requirements for even basic math.  He is able to complete simple, routine, repetitive tasks not at a production rate or pace.  He could maintain concentration for at least two hours at a time, and would be on task 90% of the workday.  Plaintiff will be absent one day in a typical month.

*Id.* at 36.  At step four, the ALJ concluded that because Plaintiff did not have past relevant work,

transferability of job skills was not an issue.  *Id.*  At step five, the ALJ concluded that based on

Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the

national economy that Plaintiff was able to perform.  *Id.* at 38.  Specifically, the ALJ stated that

Plaintiff could perform jobs such as commercial cleaner.  *Id.*  Accordingly, the ALJ determined

that Plaintiff was not disabled since the date he turned eighteen.  *Id.* at 38–39.

## II.     STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence

in the record to support the ALJ's findings, and whether the correct legal standards were applied.

*See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284

F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is more than a scintilla, but less than a

preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to

support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing

*Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  In reviewing the ALJ's decision, a court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment' for that of the Commissioner."  *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *3 (11th Cir. Jan. 10, 2022) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).  Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision.  *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015).  Even if the Court finds that "the evidence preponderates against the Commissioner's findings," the Court must affirm Commissioner's decision if the decision is supported by substantial evidence.  *See* Crawford, 363 F.3d at 1158–59.  In this respect, "the ALJ has a basic obligation to develop a full and fair record[,]" given that a hearing before an ALJ is not an adversarial proceeding.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  The Court also reviews the ALJ's decision "to determine whether the correct legal standards were applied."  *Id.*  However, no "presumption of validity attaches to the [ALJ's] conclusions of law."  *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## III.     ANALYSIS

Plaintiff does not contest the ALJ's finding that he was not disabled before attaining the age of eighteen or the ALJ's findings with respect to his medical impairments upon attaining the age of eighteen.  Instead, Plaintiff only challenges the ALJ's RFC finding with respect to absenteeism and the ALJ's findings at step five of the adult sequential evaluation process.  *See* ECF No. [7] at 7–14.

First, Plaintiff argues that substantial evidence contradicts the ALJ's RFC finding that he "would be expected to miss only one day per month because he was, in fact, routinely absent

multiple times over that amount over the course of many years." *Id.* at 9.  Plaintiff argues that the ALJ's finding that he would be absent one day in a typical month and could be on task 90% of the day contradicts the record, which shows that: in ninth grade, he was absent from school forty-two times and tardy twelve times; in tenth grade, he was absent twenty-nine times; in eleventh grade, he was absent fifty-one times and tardy twice; and in twelfth grade, he was absent forty-seven times and tardy once.  *Id.*

As a result, Plaintiff argues that the VE's testimony with respect to his absenteeism does not constitute substantial evidence upon which the ALJ could rely because it is inconsistent with the Government's data.  *Id.* at 9.  Plaintiff argues that the Bureau of Labor Statistics ("BLS") provides that "the average rate of absenteeism due to illness, injury, or other reasons is just 3.0 absences annually" and 2.1 absences annually "[w]hen filtered down to absenteeism specifically due to illness or injury."  *Id.* at 9–10 (citation omitted).  Plaintiff argues that this data is inconsistent with the VE's testimony that an individual could miss work up to twelve days in a year and still maintain competitive employment.  *Id.* at 10.  Plaintiff further argues that if he were off-task up to ten percent of a workday as the ALJ indicated, this would mean four hours a week, 200 hours in a fifty-week work year, or twenty-five eight-hour workdays.  *Id.*  Plaintiff submits that this would be "over 500 percent greater than the average 3.0 annual absences reported by the BLS." *Id.*

Second, Plaintiff argues that there is an apparent conflict between the VE's description of the requirements for a commercial cleaner and the DOT's description of that job, and as such, that the VE's testimony does not constitute substantial evidence upon which the ALJ could properly rely.  *Id.* at 7.  Specifically, Plaintiff argues that the following apparent conflicts exist: (1) the DOT job description for commercial cleaner requires occasional climbing, but Plaintiff's RFC states that he can never climb ladders, ropes, or scaffolds; (2) the DOT job description for commercial

cleaner "involves exposure to hazardous machinery/mechanical parts or unprotected heights," but Plaintiff's RFC provides that "there should be no exposure at all"; and (3) the DOT job description for commercial cleaner requires frequent reaching and handling and Plaintiff's RFC, which provides that Plaintiff "is able to is able to complete simple, routine, repetitive tasks, but not at a production rate or pace." *Id.* at 7–8.

In addition, Plaintiff argues that the VE's testimony regarding the number of jobs available in the national economy is insufficient. *Id.* at 10–12. Plaintiff contends that after identifying the number of jobs available in an SOC group, the VE should have approximated how many of those specific jobs Plaintiff could perform. *Id.* at 13. Thus, Plaintiff argues that the VE's reliance on the equal distribution method to calculate the number of jobs available per SOC group resulted in the inclusion of jobs that Plaintiff could not perform based on his RFC. *Id.* at 12.

Defendant filed a Response and Cross-Motion for Summary Judgment. ECF No. [17]. As to the ALJ's RFC finding with respect to Plaintiff's absenteeism, Defendant argues that Plaintiff "fails to adequately develop this argument." *Id.* at 16–17. Defendant argues that Plaintiff has failed to show how his school records compel a different finding. *Id.* Defendant further argues that the alleged "RFC limitation[] must be attributable to [Plaintiff]'s medically determinable impairments, not to other things like the bus running late or minor colds and flus." *Id.* Finally, Defendant argues that there is no conflict between the VE's testimony and the Government's data because the DOT is silent as to this issue, and as such, the ALJ was not under any duty to resolve any purported conflict. *Id.*

As to the alleged apparent conflict between the VE's testimony and the DOT, Defendant argues that the ALJ's decision is supported by substantial evidence. *Id.* at 7. First, Defendant argues that because Plaintiff did not allege any physical impairments as a basis for disability, he is

14

capable of working as a commercial cleaner. *Id.* at 8 n.3. Defendant states that, even if there were a conflict, "the VE also testified that the hypothetical individual could perform the jobs of sandwich maker and kitchen helper" and "[n]either of these jobs requires any climbing, per DOT." *Id.* at 9 (citations omitted). Although the ALJ decision only includes the job of commercial cleaner, Defendant submits that this omission constitutes harmless error. *Id.* at 9. Second, Defendant argues that the DOT states there is no exposure to high exposed places, moving mechanical parts, or other environmental conditions in either the commercial cleaner, sandwich maker, or kitchen helper job. *Id.* at 14. Third, Defendant argues there is no support for Plaintiff's argument that because a commercial cleaner job involves repetitive tasks and frequent reaching or handling, this necessarily means that he would be required to work at an assembly-line pace. *Id.* at 15. Defendant argues that the DOT does not state that a commercial cleaner would be required to work at a production rate pace, and as such, no apparent conflict could exist that the ALJ would have been required to resolve. *Id.* at 16.

Finally, Defendant argues that the VE's calculation of the number of available jobs per DOT code constitutes substantial evidence. *Id.* at 17–18. Defendant states that the equal distribution method employed by the VE has been cited by the Eleventh Circuit Court of Appeals as a methodology available to VEs. *Id.* at 18.

## A. The ALJ's RFC Finding Is Supported By Substantial Evidence.

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines the RFC "based on all the relevant evidence in [the] case record." *Id.* In this case, the ALJ stated that while Plaintiff had some functional limitations, they did not preclude him from all work-related activity. R. at 37. The ALJ further stated that although Plaintiff alleges "disabling psychiatric symptoms, [] the objective findings do not support that level of limitation."

15

*Id.* Within this context, the ALJ concluded that although Plaintiff was not functionally limited to the extent alleged, his RFC was reduced to account for his symptoms. *Id.* In addition, his RFC was reduced to account for his "history of frequent absences from school." *Id.*

Plaintiff first argues that the RFC finding that he would only be absent from work one day per month is undermined by his high school attendance records. ECF No. [14] at 11. Plaintiff generally states that the attendance records demonstrate that he would be absent more than one day per month. *Id.* As an initial matter, Plaintiff's bare-bones argument ignores the fact that the ALJ considered his attendance record, adjusted his RFC to account for those records, but ultimately determined that the evidence was not indicative of Plaintiff's claimed disability. Because the ALJ considered Plaintiff's attendance record and addressed it in his RFC, no more is required. *See Holland on behalf of W. v. Comm'r of Soc. Sec.*, 842 Fed. Appx. 344, 349 (11th Cir. 2021) (concluding that the ALJ's statement that she "reviewed the various educational evidence submitted into the record" was sufficient and that "a more detailed accounting of that evidence" was not required); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole.").

Plaintiff argues that the VE's testimony that he could be absent up to one day per month (up to twelve days per year) and could be off task up to ten percent of the workday (200 hours in a year or twenty-five eight-hour workdays) conflicts with the Bureau of Labor Statistics, which states that the average rate of absenteeism is between two and three absences per year. ECF No. [14] at 9–10. Plaintiff argues that the ALJ erred in failing to resolve this conflict. *Id.* at 9. However, even if there were a conflict between the VE's testimony and the Bureau of Labor

Statistics, the Eleventh Circuit has concluded that the ALJ is only required to resolve conflicts between the VE's testimony and the DOT. *Webster v. Comm'r of Soc. Sec.*, 773 Fed. Appx. 553, 555–56 (11th Cir. 2019). In *Webster*, the Court noted that this affirmative duty to resolve conflicts does *not* extend to any information contained in the Bureau of Labor Statistics. *Id.* at 556 ("Unlike the situation in which the VE's testimony conflicts with the DOT, this Court has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the OES."). Accordingly, the ALJs RFC determination is supported by substantial evidence.

### B.  The ALJ's Findings At Step Five Are Supported By Substantial Evidence.

Social Security Ruling 00-4p provides guidance as to how ALJs must weigh VE testimony and information contained in the DOT. *See* SSR 00-4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). Specifically, "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." *Washington*, 906 F.3d at 1362. Thus, the ALJ is required to ask for an explanation of the conflict and, ultimately, to resolve it. *Id.* at 1363 (noting that SSR 00-4p "provides that the ALJ must explain the resolution of the conflict irrespective of how the conflict was identified") (quotation and emphasis omitted).

In *Washington*, the ALJ described a hypothetical individual that could only perform occasional fine manipulation, also known as occasional fingering. *Id.* at 1357. The VE testified that this hypothetical individual could be employed as a table worker or bagger. *Id.* The VE specifically testified that his testimony regarding these two jobs was consistent with the DOT. *Id.* In his decision denying social security benefits, the ALJ adopted the VE's testimony regarding the

available jobs, stating that his determination was consistent with the DOT. *Id.* However, the DOT description of table worker and bagger "describes both of these jobs as requiring frequent fingering." *Id.* The Eleventh Circuit concluded that there was an apparent conflict between the VE's testimony and the DOT. *Id.* at 1366. The Court explained that the different between occasional and frequent "is patent and significant," and as such, that the ALJ had an affirmative duty to resolve this conflict. *Id.* at 1366–67; *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1316–17 (11th Cir. 2021) (concluding that the ALJ was required to resolve the apparent conflict "between an RFC to simple, routine, and repetitive tasks and level 3 reasoning, which requires the ability to apply commonsense understanding furnished in written, oral, or diagrammatical form and to deal with problems involving several concrete variables in or from standardized situations"); *Johnson v. Comm'r of Soc. Sec.*, 782 Fed. Appx. 875, 878 (11th Cir. 2019) ("We believe that there is at least 'apparently' a conflict between an employee limited to 'simple, routine tasks' and one able to 'deal with problems involving several concrete variables.'").

At the hearing in this case, the ALJ asked the VE to consider a hypothetical individual who: had no past relevant work; could not climb ladders, ropes or scaffolds; could not have exposure to hazardous machinery or mechanical parts and no unprotected heights; could occasionally interact with co-workers, supervisors and the public; could complete simple, routine and repetitive tasks, but not at a production rate or pace; could maintain concentration for at least two hours at a time; could be on task 90% of the workday; could not do basic math; would be absent one day per month; and would only be on task 90% of the day. R. at 73–75. The VE testified that based on the DOT, this hypothetical individual could work as a commercial cleaner, sandwich maker, and kitchen helper. *Id.* at 73–75. The VE stated that her testimony regarding the available jobs was consistent with the DOT. *Id.* at 76–79. In her decision, the ALJ incorporated

all of the above limitations to Plaintiff's RFC and stated that, based on the VE's testimony at the hearing, Plaintiff "would be able to perform the requirements of representative occupations such as" commercial cleaner. *Id.* at 38. However, the DOT description for commercial cleaner requires occasional climbing, the cutting and trimming of grass and shoveling of snow "using power equipment or handtools," and frequent reaching and handling. DOT, Commercial Cleaner, No. 381.687-014, 1991 WL 673257 (G.P.O). These requirements constitute an apparent conflict with Plaintiff's RFC, which includes a categorical limitation on climbing and on the use of hazardous machinery. *See* ECF No. [13] at 36 ("He could never climb ladders, ropes, or scaffolds . . . He should not have any exposure to hazardous machinery/mechanical parts . . . ."). Moreover, although Plaintiff's RFC does not contain a limitation on reaching and handling, it states that Plaintiff cannot perform tasks "at a production rate or pace." *Id.* Therefore, pursuant to SSR 00-4p, the ALJ had an obligation to address and resolve these conflicts and the failure to do so is error.

Having concluded that the ALJ erred in failing to resolve the apparent conflicts between the VE's testimony and the DOT, the undersigned considers, as the Commissioner contends, whether the error is harmless. An ALJ's factual error is considered harmless when "it is clear that the error did not affect the ALJ's ultimate determination." *Jacobus v. Comm'r of Soc. Sec.*, 664 Fed. Appx. 774, 776 (11th Cir. 2016). Under the harmless error analysis, remand is unnecessary when it would be a waste of judicial resources and would not change the administrative result. *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Himes v. Comm'r of Soc. Sec.*, 585 Fed. App'x 758, 761 (11th Cir. 2014) ("[E]ven if an ALJ made a factual error or applied an improper legal standard, we may find the errors harmless in light of the whole case."); *Caldwell v. Barnhart*, 261 Fed. App'x 188, 190 (11th Cir. 2008) (noting that an ALJ's error is harmless if "the correct application would not contradict the ALJ's ultimate findings"). For example, in *Zoslow v.*

*Commissioner of Social Security*, the Eleventh Circuit concluded that the ALJ's failure to resolve an apparent conflict under *Washington* in its written decision was harmless "because the record shows that the ALJ (in his colloquy with the second VE) acknowledged the conflict and resolved it by asking the second VE to clarify."  778 Fed. Appx. 762, 765 (11th Cir. 2019).  The Court, therefore, concluded that the omission in the written decision was harmless because the hearing transcript revealed that the ALJ "complied with its duties under SSR 00-4p." *Id.*

At the hearing, the VE testified that a hypothetical individual with Plaintiff's limitations could also perform two other jobs–sandwich maker and kitchen helper–which existed in significant numbers in the national economy.  R. at 73–75.  However, the ALJ's decision does not include the jobs of sandwich maker or kitchen helper; instead, the decision only includes the job of commercial cleaner, stating that it is one "representative occupation" of those Plaintiff could perform.  R. at 38.  Defendant argues that the ALJ's failure to list the jobs of sandwich maker and kitchen helper in her decision was harmless.  ECF No. [17] at 12–13.  Specifically, Defendant argues that because the determination that Plaintiff could perform these two jobs can be found in the record in this case, [t]here is no point in remand[] since the sole purpose would be for the Commissioner to include in the decision the two other jobs the VE identified in response to the ALJ's hypothetical questions that included all of Plaintiff's RFC limitations." *Id.* at 13.  The undersigned agrees.

In *Degaglia v. Commissioner of Social Security*, the ALJ's decision contained a "scrivener's or factual error" because it listed jobs based on the first hypothetical presented to the VE and not based on a hypothetical individual containing all of the limitations in the plaintiff's RFC.  No. 5:20-cv-186-PRL (M.D. Fla. June 24, 2021), ECF No. [28] at 4.  The district court concluded that the factual error in the ALJ's decision as to the type of jobs the plaintiff could perform was harmless because it did not affect the ultimate disability determination. *Id.* at 4–5.

Specifically, the court concluded that the VE's testimony at the hearing established that a hypothetical individual with the plaintiff's RFC limitations could perform jobs in the national economy. *Id.* at 7. The court relied on the transcript of the hearing before the ALJ, which demonstrated that "[t]he ALJ clearly outlined that the limitations posed to the VE were to be added to the second hypothetical" and based on this second hypothetical, the VE testified that there were jobs in the national economy in significant numbers that the second hypothetical individual could perform. *Id.* at 5–7. Thus, the court concluded that although the ALJ made a factual error in his written decision by listing the jobs that corresponded to the first hypothetical, the VE's testimony at the hearing constituted substantial evidence to support the disability determination because the VE testified that there were jobs that the second hypothetical individual could perform. *Id.* at 7 ("Although the ALJ mistakenly identified the wrong jobs in his opinion, there is still substantial evidence to support his findings.").

In this case, the Court considers the record as a whole, including the ALJ's written decision and the transcript of the hearing. *See Zoslow*, 778 Fed. Appx. at 765 (considering both the ALJ's written decision and the colloquy with the VE during the hearing). At the hearing, the VE testified that a hypothetical individual with the same limitations as Plaintiff's RFC could work as a sandwich maker and kitchen helper. R. at 73–75. Plaintiff has not disputed that the DOT description for these jobs is consistent with his RFC, nor could he because the DOT specifically states that the jobs do not require climbing, exposure to heavy machinery, exposure to high places, or any math skills beyond a level one (the lowest possible level). *See* DOT, Kitchen Helper, No. 318.687-010, 1991 WL 672755 (G.P.O); DOT, Sandwich Maker, No. 317.664-010, 1991 WL 672749 (G.P.O.). Although the ALJ made a factual error in failing to include the sandwich maker and kitchen helper jobs in its written decision, the error is harmless error because the VE's

testimony with respect to these jobs constitutes substantial evidence to support the ultimate disability determination. Remand to have the ALJ list these two jobs in its decision is unnecessary because the VE's testimony regarding Plaintiff's ability to perform these jobs is already part of the record in this case. To be sure, the ALJ testified that a hypothetical individual with Plaintiff's RFC could perform these two jobs and no arguments have been made to the contrary. Accordingly, the ALJ's finding at step five with respect to Plaintiff's ability to work is supported by substantial evidence.

Finally, Plaintiff cites *Goode v. Commissioner of Social Security*, 966 F.3d 1277 (11th Cir. 2020), for the proposition that the equal distribution method used by the VE here to calculate the number of available jobs is insufficient. In that case, the Eleventh Circuit noted that there were various methodologies available to the VE, including the equal distribution method. *Id.* at 1284. The Court explained that this method "assumes that the total number of jobs that exist for a given SOC group are distributed equally among the number of DOT occupations within that SOC group." *Id.* (citation omitted). The Court instructed that "[w]hen the matter returns to the ALJ, the vocational expert will need to ensure that he or she begins by using the correct SOC group code . . . the vocational expert should figure out the total number of jobs available in [the] SOC [code], and determine how many DOT codes are indeed in that SOC group. From there, the vocational expert must estimate the number of available jobs . . . and provide some explanation for how he arrived at that latter number." *Id.*

Here, Plaintiff does not argue, as the plaintiff in *Goode* did, that there was an error in the VE's determination of the relevant SOC group or DOT codes. Instead, Plaintiff argues that the VE's opinion could not constitute substantial evidence because the VE used the equal distribution method in determining the number of available jobs. However, there is no authority for this broad

proposition, and in fact, courts in this District have upheld the equal distribution method.  *See Ragusa v. Kijakazi*, No. 21-CV-80235, 2022 WL 1479405, at *9 (S.D. Fla. Feb. 15, 2022), *report and recommendation adopted*, No. 21-80235-CIV, 2022 WL 1012898 (S.D. Fla. Apr. 5, 2022) (concluding that "the equal distribution method was an acceptable and reliable methodology for the ALJ to rely upon to make his findings at step five"); *Ramos v. Comm'r of Soc. Sec.*, No. 20-23478-CIV, 2021 WL 5746358, at *8 (S.D. Fla. Nov. 9, 2021), *report and recommendation adopted sub nom.*, No. 20-CV-23478, 2021 WL 5743332 (S.D. Fla. Dec. 2, 2021) (upholding the equal distribution method and refusing "to consider post-hearing data in an attack on the VE's testimony about job availability").

In this case, the VE testified that she arrived at her calculation by dividing the number of available jobs for each SOC code by the amount of DOT codes in that category.  R. at 78.  The VE stated that the calculation was an estimate because job availability was not published by DOT code.  *Id.*  There is no indication that the VE's testimony was inaccurate or that she did not also consider her professional experience in estimating the number of available jobs.  Indeed, Plaintiff stipulated that the VE was qualified.  *See id.* at 72.  Accordingly, the VE's testimony regarding the number of available jobs constitutes substantial evidence to support the ALJ's determination.

## IV.    RECOMMENDATION

For the reasons stated above, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion, ECF No. [14], be **DENIED**, and Defendant's Motion, ECF No. [17], be **GRANTED**.

## V.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely

file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on June 13, 2022.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**